■ ROBERT LUNDE, JR., Respondent, v NICHOLS YACHT SALES, INC., Appellant.—In an action to recover damages for personal injuries, the defendant appeals from so much of a judgment of the Supreme Court, Westchester County (Palella, J.), entered April 21, 1987, as, upon a jury verdict, found it 95% at fault for the happening of the accident.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

The plaintiff was an employee of Nichols Yacht Yard Inc., which was located at 500 Rushmore Avenue in Mamaroneck, when he injured his hand attempting to fix a boat lift that had malfunctioned. The defendant was also located on the same premises. The business of Nichols Yacht Yard generally entailed the repair and storage of boats. The defendant was involved in selling boats and the motors. On numerous occasions, when boats were purchased from the defendant, Nichols Yacht Yard would perform the task of actually launching the boat and bill the defendant for services rendered.

As of April of 1981, the plaintiff worked in the so-called "Dry Sail" area which included the task of taking boats less than 24 feet long and weighing less than 6,000 pounds from

their shelves on land and transporting them to the water for use on a daily basis. A device called the "big lift" was used to transport and launch boats weighing over 6,000 pounds. A group of Nichols Yacht Yard employees called the "yard crew" were responsible for using the big lift and the handling of any boat over 24 feet. The plaintiff was not a part of the yard crew and rarely handled boats larger than 24 feet or boats weighing over 6,000 pounds.

On July 18, 1982, a 40-foot, 6½-ton speed boat sold by the defendant was to be delivered to purchaser. Certain employees of the defendant told the plaintiff that he and a co-worker were to launch the boat as none of the yard crew was present. No one asked the plaintiff if he knew how to use the big lift. While the straps of the "big lift" were lowered in order to give the plaintiff slack to connect them beneath the boat, the arms of the lift would not come down because a cable had come off a pulley. The defendant's employees present at the scene made the plaintiff aware of the problem and told him to get a boat hook (a long pole with a hook on the end) and pull the cable over the pulley. While attempting to correct the problem, the plaintiff's hand was pulled into the pulley. Evidence was adduced at trial that the lift malfunction had been caused by a boat trailer parked too close to the lift which prevented one of the outer arms from dropping.

Immediately prior to the commencement of trial, the court precluded any reference to the Workers' Compensation Law due to the existence of an order striking the defendant's affirmative defense of workers' compensation, which was the law of the case.

The defendant's contention that the plaintiff failed to meet its burden of showing that it owed a duty to the plaintiff is without merit. Upon a review of the record, we find the plaintiff proffered sufficient evidence, as a matter of law, to show that the defendant was either an owner (see, *Bach v Emery Air Frgt. Corp.*, 128 AD2d 490) or general contractor (see, *Copertino v Ward*, 100 AD2d 565) of the premises, including the big lift where the injury occurred, and thus incurred the duty to provide a safe workplace pursuant to Labor Law § 200. Furthermore, the record reveals that the defendant acted in such a capacity which gave it the authority to control the activity to such an extent which would have enabled it to avoid or correct the unsafe condition (see, *Russin v Picciano & Son*, 54 NY2d 311, 317; *Lee v Fisher Hotels*, 130 AD2d 628). Lastly, we note that no notice of the dangerous condition was required as a diligent inspection of the premises would have

disclosed the location of the boat trailer that caused the worker's injury *(see, Birdsall v Montgomery Ward & Co.,* 109 AD2d 969, *affd* 65 NY2d 913; *Rogers v Dorchester Assocs.,* 32 NY2d 553; *Albergo v Deer Park Meat Farms,* 138 AD2d 656).

Turning to the weight of the evidence presented at trial, we find the jury could have reached its conclusion on a fair interpretation of the evidence *(see, Delgado v Board of Educ.,* 65 AD2d 547, *affd* 48 NY2d 643; *Tripoli v Tripoli,* 83 AD2d 764, *affd* 56 NY2d 684). At the very least, the jury could have found the defendant owed the plaintiff a duty to inspect the premises for any potentially dangerous condition *(see, Kennedy v McKay,* 86 AD2d 597, 598; *Monroe v City of New York,* 67 AD2d 89, 96). The credible evidence reveals that had such an inspection been performed, the boat trailer which interfered with the performance of the lift would have been discovered.

Finally, we find the trial court's qualification of Patrick Barrett as an expert witness was not an improvident exercise of discretion *(see, Tarlowe v Metropolitan Ski Slopes,* 28 NY2d 410), and the fact that Barrett did not explain the underlying assumptions used to express his opinions did not undermine his testimony as this was left open for cross-examination and only affects the weight of the expert testimony *(see, Tarlowe v Metropolitan Ski Slopes, supra;* CPLR 4515). Lawrence, J. P., Kunzeman, Sullivan and Balletta, JJ., concur.